UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| SHIRLEY CLAY | CIVIL ACTION NO. 14-2755 |
| VERSUS | JUDGE ROBERT G. JAMES |
| DR. FRANK POGUE, ET. AL. | MAG. JUDGE JOSEPH PEREZ-MONTEZ |

### RULING

Plaintiff Shirley A. Clay ("Clay") brought this suit against Dr. Frank G. Pogue ("Pogue"), then-acting President of Grambling State University ("Grambling"), in both his individual and official capacity, and against the Board of Supervisors for the University of Louisiana System for alleged violations of the Louisiana Whistleblower Statute, LA. REV. STAT. § 23:967, *et seq*., ("the LWS") and federal law. At this point in the litigation, only Clay's claim against Pogue in his individual capacity for alleged violations of the LWS remains.

Pending before the Court is Pogue's Motion for Summary Judgment [Doc. No. 38]. For the following reasons, the motion is GRANTED, and Clay's Complaint is DISMISSED WITH PREJUDICE.

### I.   FACTS AND PROCEDURAL HISTORY

Grambling employed Clay from November 1, 2007, through September 30, 2013, as Endowment, Stewardship, and Planned Giving Coordinator for the Division of Institutional Advancement ("Endowment Coordinator"). Clay claims that the funding for her position came from a Title III grant from the United States Department of Education ("DOE").[1] The position was subject

---

[1] The DOE awarded the grant to Grambling, presumably, in accordance with Subchapter III of the Higher Education Act of 1965. That Act is codified at 20 U.S.C. § 1057, *et seq*. Of note, Subchapter B of the Act allows for federal grants to Historically Black Colleges and

to the availability of funds for each fiscal year, which ran from October 1 to September 30. Clay's position as Endowment Coordinator was funded for the 2012-2013 year. Pogue points out, however, that for each year that funding was approved for her position, Clay acknowledged in writing that her position was at will and subject to the available funding.

In order to receive the funding each year, Grambling was required to submit an application to the DOE. The grants run in five-year cycles.[2] Fiscal year 2013-2014 was the second year of the five-year cycle which began with the 2012-2013 fiscal year. Grambling submitted the continuing grant application for fiscal year 2013-2014 in late July of 2013. [Doc. No. 38-9, Tanika Whitley Declaration]. It did not seek funds for Clay's position. *Id*. According to Tanika Whitley ("Whitley"), then-Acting Executive Director of Title III programs, this was because there was a 5% reduction in the amount of funds available for the 2013-2014 year due to an ongoing sequestration. The 2013-2014 application was ultimately approved, presumably by the DOE. *Id*.

After the application was submitted, but, potentially, before it was approved, on August 19, 2013, Clay wrote a letter to Dr. Sandra Woodley ("Woodley"), then-President of the University of Louisiana Systems. Clay admitted in her deposition that this letter was her first attempt to alert officials of perceived improprieties which could sustain a claim under the LWS. The highlights of the letter include: (1) a charge of incompetent and unprofessional administrators, (2) a complaint that Pogue failed to appoint competent administrators, (3) a charge that the president was giving raises to "really personal friends," (4) a charge that Pogue had not taken proper steps to "advance" the

---

Universities of certain activities when approved by the Secretary of the DOE. *See* 20 U.S.C.A. §§ 1062, 1063a.

[2]It appears that the DOE agreed to provide funding for five-year increments, but the exact amount of funds awarded was determined on a year-to-year basis.

institution forward from a fund-raising perspective, (5) a complaint that Pogue had not met with those in charge of fund-raising enough, (6) a complaint that Pogue appointed an unqualified supervisor, (7) a charge that one Debra Johnson did not have the qualifications to lead the fund-raising department, and (8) a general complaint that Pogue's choices and lack of leadership would be problematic in the future. [Doc. No. 38-6]. Further, in a declaration attached to her memorandum in opposition to this motion, Clay claims that, before she received notice of her termination on August 26, 2013, she wrote to the Board of Supervisors for the University of Louisiana System advising it that Pogue was engaging in fraud related to charitable solicitations. [Doc. No. 40, Exh. D]. It is unclear whether the letter she is referring to is the August 19, 2013 letter, or, if it is another letter that is not in the record.

On August 26, 2013, Pogue wrote a letter to Clay informing her that "based on the recommendation of the Vice President for Finance and Administration/Interim Vice President for Institutional Advancement, your unclassified at-will employment with [Grambling] will officially end at the close of business on Monday, September 30, 2013." [Doc. No. 40, Exh. B].

After receiving Pogue's letter, Clay wrote again to Dr. Woodley. Clay expressed her belief that her salary for the next fiscal year had been approved. She claimed that, if her position was terminated, "funds may be misappropriated or wrongfully allocated in restricted areas other than advancement." [Doc. No. 38-7].

Clay next wrote a letter to Pogue on August 29, 2013. In the letter, Clay lamented the fact that she failed to "speak up" in the past and lobbied Pogue to restore her job. Pogue declined. Clay apparently remained in her position until September 30, 2013, the conclusion of the 2012-2013 fiscal year.

On September 18, 2014, Clay filed this suit against the Board of Supervisors for the University of Louisiana System and Pogue, alleging that her termination violated 42 U.S.C. §§ 1981 and 1983 and the LWS.

On April 24, 2015, this Court adopted, in part, a report and recommendation [Doc. No. 18] issued by Magistrate Judge James D. Kirk. Specifically, the claims against the Board of Supervisors for the University of Louisiana System were dismissed on sovereign immunity grounds. All claims against Pogue in his official capacity were dismissed. The claims under Sections 1981 and 1983 against Pogue in his individual capacity were dismissed for failure to state a claim. However, this Court allowed Clay to amend her Complaint to assert a proper claim under the LWS against Pogue in his individual capacity. On August 7, 2015, Magistrate Judge Kirk issued a second report and recommendation [Doc. No. 28] which recommended finding the Complaint now stated a claim. This Court adopted the Report and Recommendation and allowed the suit to proceed.

On May 13, 2016, Pogue filed the instant motion for summary judgment seeking dismissal of Clay's remaining claim [Doc. No. 38]. Response memoranda were filed.

II.     **LAW AND APPLICATION**

    A.     **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Topalian v.*

*Ehrmann*, 954 F.2d 1125, 1132 (5th Cir. 1992); *see also* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be . . . disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. *Norman v. Apache Corp.*, 19 F.3d 1017, 1023 (5th Cir. 1994). In evaluating the evidence tendered by the parties, the Court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. However, "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. Thus, Summary Judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see also Ruiz v. Whirlpool, Inc.*, 12 F.3d 510, 513 (5th Cir. 1994) ("Testimony based on conjecture or speculation is insufficient to raise an issue of fact to defeat a summary judgment motion because 'there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. . . . If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.'").

  **B. LWS**

Clay's remaining claim in this litigation falls under the LWS, which provides, in pertinent part:

5

> A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:
>
> (1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.
>
> (2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.
>
> (3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

LA. REV. STAT. § 23:967(A).

The LWS defines reprisal to include "firing, layoff, loss of benefits, or any other discriminatory action the court finds was taken as a result of an action by the employee that is protected by Subsection A of this Section..." *Id.* at § 23:967(C)(1).

Louisiana courts look to federal anti-discrimination jurisprudence for guidance when interpreting the LWS. *See Sprull v. City of Baton Rouge*, 09-689, 2012 WL 2426793 at *2 (M.D. La. June 26, 2012). Accordingly, the *McDonnell Douglas* burden-shifting framework is used to evaluate the evidence. *See Kirmer v. Goodyear Tire & Rubber Co.*, 538 Fed. App'x 520, 527 (5th Cir. 2013). Under that framework, Clay must first establish a *prima facie* case.

"In order for a plaintiff to establish a *prima facie* case of retaliation under [the LWS], he must show (1) that he engaged in activity protected by the statute; (2) he suffered an adverse employment action; and (3) a causal connection existed between the activity in which he engaged and the adverse action." *Bain v. Ga. Gulf Corp.*, 462 Fed.App'x 431, 433 (5th Cir. 2012) (citations omitted).

The case law interpreting the LWS has delineated important guidelines for the statute's

6

application. First, the Louisiana Supreme Court has recently endorsed the position uniformly adopted by the Louisiana appellate courts: only violations of *state* law–not federal law–can support a cause of action under the LWS. *See Encalarde v. New Orleans Ctr. for Creative Arts/Riverfront*, 2014-2430 (La. 2/13/15); 158 So.2d 826-27; *see also Accardo v. La. Health Servs. & Indem. Co.*, 2005-2377 (La. App. 1 Cir. 6/21/06); 943 So.2d 381, 387; *Barber v. Marine Drilling Mgmt., Inc.*, No. 01-1986, 2002 WL 237848 at *10 (E.D. La. Feb. 15, 2002); *Wilson v. Tregre*, 787 F.3d 322, 326 (5th Cir. 2015); *Wells v. City of Alexandria*, No. 03-30750, 2004 WL 909735 at *1 (5th Cir. Apr. 29, 2004).

Second, the Fifth Circuit, interpreting the LWS, has found that the plaintiff must point to a *specific* provision of state law which the employer violated. *See Ware v. CLECO Power LLC*, 90 Fed. App'x. 705 (5th Cir. 2004); *Genella v. Renaissance Media*, 115 Fed.App'x. 650 (5th Cir. 2004).

Third, according to all Louisiana appellate courts that have considered the issue, the employer must *actually* violate state law. *See, e.g., Accardo* 943 So.2d at 383; *Hale*, 886 So.2d at 1210, *writ denied*, 896 So.2d 1036 (La. 3/24/05); *Goldsby v. State Dep't of Corr.*, 861 So.2d 236 (La. App. 1 Cir/ 11/7/03), *writ denied*, 0328 870 So.2d 271 (La. 4/8/04), and *writ denied*, 870 So.2d 271 (La. 4/8/04). Thus, the employee's good faith belief, which later turns out to be erroneous, that an employer violated the law does not give rise to a viable cause of action under the LWS. *Mabry v. Andrus*, 45, 135 (La. App. 2 Cir. 4/14/10); 34 So.3d 1075, 1081; *Ganheart v. Xavier Univ.*, No. 07-9703, 2009 WL 24227 at *9 (E.D. La. Jan. 2, 2009).

Fourth, although it does not appear that the Louisiana Supreme Court has addressed the issue, Louisiana appellate courts and federal courts agree that the *employer*, not a mere co-worker or third party, must violate state law. *See Fondren v. Greater New Orleans Expressway Comm'n*, 871 So.2d

688, 691 (La. App. 5 Cir. 4/27/04) (citing *Puig v. Greater New Orleans Expressway Commission*, 772 So.2d 842, 845 (La. App. 5 Cir. 10/31/00), *writ denied*, 786 So.2d 731 (La. 3/9/01)); *see also Goulas v. LaGreca*, 945 F.Supp.2d 693, 703 (E.D. La. 2013) (holding that employee who advised that co-worker was using drugs on premises did not have an LWS claim), *aff'd sub nom. Goulas v. LaGreca Serv., Inc.*, 13-30651, 2014 WL 718433 (5th Cir. Feb. 26, 2014).

Finally, Louisiana appellate courts and federal courts that have considered the issue agree that the employee must have ***knowledge*** of the state law violation at the time he advises the employer of it. *Crowe v. Southeast Comm. Health Sys.*, 10-2838, 2014 WL 1456352 at *6 (E.D. La. Apr. 14, 2014) (citing *Hale*, 886 So.2d at 1215).

If Clay establishes a *prima facie* case of retaliation under the LWS, the burden shifts to Pogue to produce a legitimate, non-retaliatory reason for his actions. If Pogue produces such a reason, the burden shifts back to Clay to establish that Pogue's legitimate reason for the adverse employment action is pretext for a retaliatory motive.

### C. Application to this Case

In this case, Clay cannot establish a causal connection between her allegedly protected activities and her termination, and, thus, summary judgment is appropriate.[3] Pogue produced

---

[3] Because of this finding, the Court does not address Pogue's alternative arguments that he, in his individual capacity, is not the appropriate defendant for an LWS claim, and that, even if he was, Clay did not apprise him (or anyone else) of an actual violation of state law. The Court notes, however, that many courts have applied the Louisiana Employment Discrimination Law's ("LEDL") definition of employer in LWS cases. *See, e.g, English v. Wood Group PSN, Inc.*, 15-568, 2015 WL 5061164 at 10-11 (E.D. La. Aug. 25, 2015); *Wilson-Robinson v. Our Lady of the Lake Reg'l Med. Ctr.*, Inc., 10-548, 2011 WL 6046984 at *2 (M.D. La. Dec. 6, 2011); *Johnson v. Hosp. Corp. of America*, 767 F.Supp.2d 678, 691, n.2 (W.D. La. 2011). That statute focuses on who or what entity compensates the employee. *See* LA. REV. STAT. § 23:301, *et seq*. It seems clear that Pogue, in his individual capacity, did not compensate Clay. *See Pierce v. State, Office of Legislative Auditor*, 2007-0230 (La. App. 1 Cir. 2/8/08), 984 So.2d 61, 67 (finding that, in

evidence that the decision to terminate Clay's position was made about a month before Clay wrote the August 19, 2013 letter to Woodley, which, according to Clay, was her first complaint entitling her to protection under the LWS. In support of the argument, Pogue introduces the declaration of Whitley, then-Acting Executive Director of Title III Programs. Whitley states that the decision not to seek Title III funding for Clay's position was made on July 24, 2013, when the continuation application was submitted and almost a month prior to Clay's first whistleblowing. The actual application is attached to the declaration. It indicates that no funds were sought for Clay's position. Thus, it does not appear that Clay can meet even her minimal burden at the *prima facie* stage of establishing a causal connection between the allegedly protected activity and the termination. Even if the Court were to assume she met that burden, Pogue has produced a legitimate, non-retaliatory reason for her termination.

      Clay responds by attacking the validity of the continuing application, as well as Grambling's handling of the situation. First, Clay points out that the application which Pogue introduced into the record differs from applications in the past which are stamped "approved" and bear the submission date on the front cover. However, it does not matter when the application was approved: the evidence shows that the decision to forego funding for Clay's position was made before the alleged protected activity.[4] Moreover, the lack of submission date does not so impugn the validity of the application so as to raise an issue for trial. For one thing, the prior applications had been overseen by a different administrator. The 2013-2014 application was Whitley's first. Thus, it is unremarkable that

---

LEDL suit against the Office of the Legislative Auditor, suit against the Legislative Auditor in his individual capacity was baseless).

    [4]Incidentally, Whitley also testifies that the continuing application was eventually approved. Clay has no evidence to the contrary.

Whitley's applications might differ–however slightly–from those of her predecessor. Further, to the extent Clay speculates that the continuing application attached to Whitley's declaration is not authentic, the Court would note that speculation is insufficient to survive summary judgment. *See Lawrence v. Federal Home Loan Mortg. Corp.*, 808 F.3d 670, 673 (5th Cir. 2015) (quoting *Likens v. Hartford Life & Accident Ins. Co.*, 688 F.3d 197, 202 (5th Cir. 2012)).

Second, Clay argues that the actual notification of termination failed to indicate that Clay was terminated for lack of work even though there was the opportunity to check such a box on the form. The argument is weak, and its relevance is unclear. Grambling claims it terminated Clay because of budgetary concerns, not a lack of work.

Third, Clay argues that there was "no showing that the 5% reduction in funds for the Title III program required a reduction in its budget." [Doc. No. 40. p. 4]. Clay misunderstands her burden on summary judgment. Once Pogue came forth with evidence that the decision to terminate Clay was unrelated to any whistleblowing, i.e., there was no causal connection, the impetus shifted to her to introduce contrary evidence, or to demean Pogue's evidence so as to raise a factual issue for trial. Pogue is not required to validate Grambling's institutional decisions. In effect, what matters is whether that decision was made prior to the whistleblowing–not whether it was a justified decision from an administrative or financial standpoint. Similarly, Clay's admonition that "Defendant has not proven there was a lack of funding for Clay's position" fails to persuade. *Id*. Again, once Pogue pointed to evidence essentially showing a causal divide between the termination decision and the allegedly protected activity, Clay was required to introduce conflicting evidence or sufficiently undermine the credibility of Pogue's evidence in order to reach the jury. The burden is not on Pogue to show the wisdom or appropriateness of the decision, only that the decision was not causally

connected to any alleged protected activity.

Finally, Clay charges that she did not receive appropriate notice that her funding was being discontinued in accordance with the "Acknowledgment of Conditions of Grant-Funded Positions" form which Clay signed to indicate that she understood her employment was subject to available funding. As Pogue notes, the relevant provision of the form requires notice when the funds are cancelled in the midst of an "appointment." [Doc. No. 38-4, p. 15]. In this case, the 2012-2013 cycle had concluded and the decision to forego funding for the position was made prior to the start of the 2013-2014 cycle. Thus, there was no cancellation in the midst of an appointment and no occasion for any type of advanced notice. Even if there was, this argument fails to address the only question at issue: whether the decision to terminate Clay was retaliatory in nature. Because the uncontroverted evidence shows that the decision was made prior to any protected activity, the Court finds that there was no reprisal under the LWS. Accordingly, Pogue's Motion for Summary Judgment is GRANTED, and Clay's Complaint is DISMISSED WITH PREJUDICE.

### III.  CONCLUSION

For these reasons, Pogue's Motion for Summary Judgment is GRANTED, and Clay's Complaint is DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 5th day of August, 2016.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE